UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TRUSTEES OF THE NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS PENSION FUND, WELFARE FUND, ANNUITY FUND, and APPRENTICESHIP, JOURNEYMAN RETRAINING, EDUCATIONAL AND INDUSTRY FUND, TRUSTEES OF THE NEW YORK CITY CARPENTERS RELIEF AND CHARITY FUND, THE CARPENTER CONTRACTOR ALLIANCE OF METROPOLITAN NEW YORK, and the NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS,

                                        Petitioners,

-against-

NASDI, LLC,

                                        Respondent.

20 CV _____

**PETITION TO CONFIRM AN ARBITRATION AWARD**

---

Petitioners, Trustees of the New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educational and Industry Fund, Trustees of the New York City Carpenters Relief and Charity Fund, the Carpenter Contractor Alliance of Metropolitan New York (the "Funds"), and the New York City District Council of Carpenters (the "Union") (together with the Funds, the "Petitioners"), by and through their attorneys, Virginia & Ambinder, LLP ("V&A"), as and for their Petition to Confirm an Arbitration Award, respectfully allege as follows:

## NATURE OF THE ACTION

1. This is an action under section 301 of the Labor Management Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C. § 185, to confirm and enforce an Arbitrator's Award rendered pursuant to a collective bargaining agreement ("CBA") involving the Union and NASDI, LLC ("Respondent").

1

## JURISDICTION AND VENUE

2.   This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 185.

3.   Venue is proper in this Court pursuant to 29 U.S.C. § 185(c) because the Union is located and administered in this district.

## THE PARTIES

4.   Petitioners Trustees of the New York City District Council of Carpenters Pension, Welfare, Annuity, Apprenticeship, Journeyman Retraining and Educational and Industry Funds (the "ERISA Funds") are employer and employee trustees of multiemployer labor-management trust funds organized and operated in accordance with ERISA.  The Trustees are fiduciaries of the ERISA Funds within the meaning of section 3(21) of ERISA, 29 U.S.C. § 1002(21).  The ERISA Funds maintain their principal place of business at 395 Hudson Street, New York, New York 10014.

5.   Petitioners Trustees of the New York City District Council of Carpenters Relief and Charity Fund (the "Charity Fund") are Trustees of a charitable organization established under section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3).  The Charity Fund maintains its principal place of business at 395 Hudson Street, New York, New York 10014.

6.   Petitioner the Carpenter Contractor Alliance of Metropolitan New York (together, with the ERISA Funds and the Charity Fund, as the "Funds") is a New York not-for-profit corporation.

7.   Petitioner Union is a labor organization that represents employees in an industry affecting commerce within the meaning of section 501 of the LMRA, 29 U.S.C. § 142, and is the certified bargaining representative for certain employees of the Respondent.

2

8. Respondent is a foreign limited liability company organized under the laws of the State of Delaware authorized to conduct business in the State of New York. At relevant times, Respondent was an employer within the meaning of section 3(5) of ERISA, 29 U.S.C. § 1002(5), and was an employer in an industry affecting commerce within the meaning of section 501 of the LMRA, 29 U.S.C. § 142. Respondent maintains its principal place of business at 39 Olympia Avenue, Woburn, Massachusetts 01801.

## THE ARBITRATION AWARD

9. On or about May 9, 2013, Respondent executed a letter of assent ("Ocean Breeze PLA Affidavit") binding it to the Project Labor Agreement Covering Specified Renovation & Rehabilitation of City Owned Buildings and Structures ("Renovation PLA") in connection with work to be performed on the Ocean Breeze Athletic Facility, located 625 Father Capodanno Blvd, Staten Island, NY 10305. A copy of the Ocean Breeze PLA Affidavit is annexed hereto as **Exhibit A**. A copy of the Renovation PLA is annexed hereto as **Exhibit B**.

10. On or about June 19, 2012, Respondent executed a letter of assent ("Police Academy PLA Affidavit") binding it to the Project Labor Agreement Covering New Construction of Identified City Owned Buildings and Structures ("New Construction PLA") in connection with work to be performed on the Police Academy, located 30-29 College Point Blvd., Queens, NY 11354. A copy of the Police Academy PLA Affidavit is annexed hereto as **Exhibit C**. A copy of the New Construction PLA (together with the Renovation PLA, the "PLAs") is annexed hereto as **Exhibit D**.

11. Through the PLAs, Respondent became bound by various collective bargaining agreements involving the Union, including in relevant part, the Union's Independent Heavy Construction Agreement, the Independent Heavy Construction Dockbuilding Marine and

Foundation Agreement, and the Independent Building Construction Agreements (collectively "CBAs").  A copy of the Independent Heavy Construction Agreement, the Independent Heavy Construction Dockbuilding Marine and Foundation Agreement, the 2011-2015 Independent Building Construction Agreement, and the 2017-2014 Independent Building Construction Agreement is annexed hereto as **Exhibit E**, **Exhibit F**, **Exhibit G**, and **Exhibit H** respectively.

12. Respondent also executed an Administration Form, which further effectuated its agreement with the Union.  A copy of the Administration Form is annexed hereto as **Exhibit I**.

13. Under the PLAs and the CBAs, Respondent was required to remit contributions to the Funds when it performed work under the PLAs that was within the trade and geographical jurisdiction of the Union ("Covered Work").  *See* Ex. B, Art. 11, Sec. 2; Ex. D, Art. 11, Sec 2; Ex. E, Art. XI, § 1; Ex. F, Art. XII, § 1; Ex. G, Art. XV, § 1; Ex. H, Art. XV, § 1.

14. The CBAs also require Respondent to furnish its books and payroll records when requested by the Funds for the purpose of conducting an audit to ensure compliance with required benefit fund contributions.  *See* Ex. E, Art. XI, § 9; Ex. F, Art. XII, § 9; Ex. G, Art. XV, § 1, Ex. H, Art. XV, § 1.

15. The PLAs and the CBAs bind Respondent to the policies, rules, and regulations adopted by the Funds.  *See* Ex. B, Art. 11, Sec. 2; Ex. D, Art. 11, Sec. 2; Ex. E, Art. XI, § 1; Ex. F, Art. XII, § 1; Ex. G, Art. XV, § 3; Ex. H, Art. XV, § 3.

16. The Trustees of the Funds established a Revised Statement of Policy for Collection of Employer Contributions (the "Collection Policy").  A copy of the Collection Policy is annexed hereto as **Exhibit J**.

17. The Collection Policy states that "[i]n the event that an employer refuses to permit a payroll review and/or audit upon request . . . the Fund Office shall determine the estimated

amount of the employer's delinquent contributions based on the assumption that the employer's weekly hours subject to contributions for each week of the requested audit period are the highest number of average hours reported per week for any period of four consecutive weeks during the audit period." Ex. J, § IV (12).

18. The CBAs provide that in the event "any dispute or disagreement arise between the parties hereto, or between the Union and any Employer signatory hereto, concerning any claim arising from payments to the Fund of principal and/or interest which is allegedly due, either party may seek arbitration of the dispute before the impartial arbitrator designated hereunder[.]" Ex. E, Art. XI, § 13; Ex. F, Art. XII, § 14; Ex. G, Art. XV, § 7; Ex. H, Art. XV, § 7.

19. The CBAs further provide that "[i]n the event that proceedings are instituted before an arbitrator . . . to collect delinquent contributions to Benefit Fund or Funds, and if such arbitrator renders an award in favor of such Fund(s), the arbitrator shall be empowered to award such interest, liquidated damages, and/or costs as may be applicable under the Agreement and Declaration of Trust establishing such Fund(s)." Ex. E, Art. XI, § 8(g); Ex. F, Art. XII, § 8(g); Ex. G, Art. XV, § 6(6); Ex. H, Art. XV, § 6(b)

20. The CBAs and the Collection Policy provide that, should the Funds be required to arbitrate a dispute or file a lawsuit over unpaid contributions, the Funds shall be entitled to collect, in addition to the delinquent contributions: (1) interest on the unpaid contributions at the prime rate of Citibank plus 2%; (2) an amount equal to the greater of (a) the amount of the interest charges on the unpaid contributions or (b) liquidated damages in the amount of 20% of the unpaid contributions; and (3) reasonable attorneys' fees and costs incurred by the Funds in collecting the delinquencies. Ex. E, Art. XI, § 8(f); Ex. F, Art. XII, § 8(f); Ex. G, Art. XV, § 6; Ex. H, Art. XV, § 6; Ex. J, § V.

21.     Pursuant to the CBAs, Petitioners requested an audit of Respondent covering the period March 28, 2016 through the present (the "Audit") in order to determine whether Respondent had remitted the proper amount of contributions to the Funds.

22.     A dispute arose between the parties when Respondent failed provide its books and records for the Audit.

23.     In accordance with the Collection Policy, the Funds determined Respondent owed an estimated principal deficiency of $663,044.20.

24.     Pursuant to the CBA's arbitration clause, Petitioners initiated arbitration before the designated arbitrator, Roger E. Maher.  The arbitrator noticed said arbitration by mailing a Notice of Hearing to Respondent by regular and certified mail.  A copy of the Notice of Hearing is annexed hereto as **Exhibit K**.

25.     Thereafter, the arbitrator held a hearing and rendered his award, in writing, dated December 11, 2019, determining said dispute (the "Award").  A copy of the Award is annexed hereto as **Exhibit L**.

26.     Specifically, the arbitrator found that Respondent violated the CBAs when it failed to permit the Funds to audit Respondent's books and records, and ordered Respondent to pay the Funds the sum of $890,705.53, consisting of: (1) the estimated principal deficiency of $663,044.20, (2) interest of $92,652.49; (3) liquidated damages of $132,608.84; (4) court costs of $400; (5)attorneys' fees of $1,500; and (6) arbitrator's fees of $500.  Ex. L.

27.     The arbitrator also found that interest at the rate of 7.5% will accrue on the Award from the date of the issuance of the Award.  *See* Ex. L.

28.     As of the date of this Petition, Respondent has failed to pay any portion of the Award.

29. The Award has not been vacated or modified and no application for such relief is currently pending.

30. This petition is timely as it was filed within the one-year statute of limitations applicable to a petition to confirm an arbitrator's award.

31. Petitioners are entitled to the reasonable attorneys' fees and costs expended in this matter pursuant to Article XI, Article XII, and Article XV of the CBAs. *See* Ex. E, Art. XI, § 8(f); Ex. F, Art. XII, § 8(f); Ex. G, Art. XV, § 6; Ex. H, Art. XV, § 6.

32. The Collection Policy further states that "[a]ttorneys' fees shall be assessed against a delinquent employer, at the same hourly rate charged to the Funds for such services . . . for all time spent by Collection Counsel in collection efforts . . . ." *See* Ex. J, § V(6).

33. Copies of V&A's contemporaneous time records, reflecting all time spent and all activities performed in the prosecution of this matter by its attorneys and staff, are annexed hereto as **Exhibit M**.

34. I, Nicole Marimon ("NM" in the accompanying billing records), am a 2014 graduate of Fordham University School of Law, and a partner at V&A. Since graduating law school and being admitted to the New York State bar, I have handled the prosecution of, and served as lead counsel on, numerous ERISA collection actions. V&A billed my time at a rate of $350 per hour for work performed in connection with this action. Ex. M.

35. V&A billed the legal assistants' time at the rate of $120 per hour for work performed in connection with this action. Ex. M.

36. All of the above-referenced rates are the result of negotiations between V&A and the Funds regarding the proper hourly rates to compensate V&A's attorneys and legal assistants for their services.

37. V&A's total billings in this matter amount to $1,505 reflecting 4.3 hours of work. Ex. M.

38. In addition, V&A will advance $70 in service fees in connection with this matter.

39. A Proposed Judgment is attached hereto as **Exhibit N**.

**WHEREFORE**, Petitioners respectfully request that this Court:

(1) Confirm the Award in all respects;

(2) Award judgment in favor of the Petitioners and against Respondent in the amount of $890,705.53, plus interest from the date of the Award through the date of judgment to accrue at the annual rate of 7.5% pursuant to the Award;

(4) Award judgment in favor of the Petitioners and against Respondent in the amount of $1,505 in attorneys' fees and $70 in costs arising out of this petition;

(5) Award post-judgment interest at the statutory rate; and

(6) Award Petitioners such other and further relief as is just and proper.

Dated: New York, New York
August 31, 2020

Respectfully submitted,

**VIRGINIA & AMBINDER, LLP**

By: /s/
Nicole Marimon, Esq.
40 Broad Street, 7th Floor
New York, New York 10004
Telephone: (212) 943-9080
Fax: (212) 943-9082
*Attorneys for Petitioners*